**ZAGAISKI v. CARBOLOY CO., Inc.**

**GREBA v. CARBOLOY CO., Inc.**

Civ. Nos. 7993, 7994.

United States District Court
E. D. Michigan, S. D.
Jan. 12, 1950.

Edward T. Kane, United States Attorney, Ward Kemp, Assistant United States

Attorney, Detroit, Michigan, for petitioners.

Beaumont, Smith & Harris, Alfred E. Lindbloom, Detroit, Michigan, for respondent.

THORNTON, District Judge.

This is a consolidated action in which the petitioners, veterans of the recent war, seek enforcement of their claimed rights under Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308.

The pertinent parts of that section are as follows: "(b) (B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;" and "(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, * * *."

The background of this controversy is sufficiently set forth in the stipulation of facts entered into by the parties, which is hereinafter quoted in its entirety:

Stipulation of Facts.

The parties to the above entitled case hereby stipulate the following facts:

1. Petitioner, Edward J. Zagaiski, was employed by Carboloy Company, Inc., respondent, on August 7, 1941, as a permanent employee.

2. Petitioner Zagaiski was inducted into the United States Army on March 29, 1943.

3. Petitioner Zagaiski left his position as furnace operator on April 2, 1943, for the purpose of entering into the military training and service of the United States and for the purpose of performing his training and service therein.

4. Petitioner Zagaiski satisfactorily completed his period of training and service in the armed forces of the United States on the 4th day of February 1946, and on said date received a certificate of honorable discharge.

5. On March 4, 1946, respondent reinstated petitioner Zagaiski as a furnace operator, the position petitioner Zagaiski formerly held.

6. Petitioner Zagaiski at all times since his employment by respondent, has been and still is a member of Local 771, U.A.W.-C.I.O., hereinafter referred to as "the Union". The Union now has, and since petitioner was first employed by respondent, has had a collective bargaining agreement with respondent and has been recognized as exclusive bargaining agent for respondent's production and maintenance employees, including petitioner Zagaiski.

7. Petitioner, Frank C. Greba, was employed by Carboloy Company, Inc., respondent, on October 8, 1941, as a permanent employee.

8. Petitioner Greba was inducted into the armed forces of the United States on March 17, 1943.

9. Petitioner Greba left his position as "precision lapper (b)" on March 16, 1943, for the purpose of entering into the military training and service of the United States and for the purpose of performing his training and service therein.

10. Petitioner Greba satisfactorily completed his period of training and service in the armed forces of the United States on February 3, 1946, and on said date received a certificate of honorable discharge.

11. On March 11, 1946, the respondent reinstated petitioner Greba as "precision lapper (b)", the position he formerly held.

12. Petitioner Greba at all times since his employment by respondent, has been and still is a member of Local 771, U.A.W.-C.I.O., hereinafter referred to as "the Union". The Union now has, and since petitioner Greba was first employed by re-

spondent, had a collective bargaining agreement with respondent and has been recognized as an exclusive bargaining agent for respondent's production and maintenance employees, including petitioner Greba.

13. The collective bargaining agreement dated April 27, 1942, in effect when petitioners were inducted, provided in Article VII as follows: "Section 1. Rate adjustments as of the effective date of this agreement shall be as set forth in Exhibit 1 attached hereto."

14. Exhibit 1 of said agreement, among other things, provides as follows: "On or before November 1, 1942, the Company will submit a Job Evaluation or classification scheme for all jobs in its plant."

15. Subsequent to April 27, 1942, the Union and respondent recognized that the proposed job evaluation or classification could not be made effective unless and until approval of the same was obtained from the War Labor Board. Thereupon, the Union and respondent entered into the following agreement:

"Carboloy Company, Inc.
                              November 17, 1942
To Hourly Employees:

At a meeting of the Shop Committee with Management held on November 17th, 1942 to discuss job classification and rates, it was agreed that it is necessary to obtain the approval of the War Labor Board before the provisions of the job classification and job rate survey can be made effective. Because of the time which may elapse before the Board's decision is rendered, the Company has agreed that—subject to War Labor Board approval—the Board's decision regarding job classification and rates would be retroactive to November 2nd, 1942 for those employees actually on the active payroll as of the date on which the decision by the War Labor Board is officially made.

It was also agreed that the question of interpretation of overtime rulings and elimination of swing shift in Metal Department would be directed to the Conciliation Service.

| Accepted for the International Union, United Automobile, Aircraft & Agricultural Implement Workers of America (U.A.W.–C.I.O.) and Local No. 771 | Accepted for the Carboloy Company, Inc. /s/ Adam MacKenzie |
| --- | --- |
| /s/ D. E. Tolhurst President — Local No. 771 | /s/ F. C. Ritner Personnel Director |

Vice-President in Chg. of Mfg.

Plant Chairman
/s/ Karl Most
/s/ O. Dumontett
/s/ H. E. Stanley
/s/ Gerald L. Neil
/s/ Stanley Bracher"

16. On or about December 28, 1942 the Union and the respondent filed a joint application with the War Labor Board for approval of a plan of job evaluation and classification.

17. On April 8, 1943, the President of the United States issued a Directive Order to the War Labor Board to withhold decisions on pending wage matters. The hearing on the joint application of the Union and the respondent above referred to had been scheduled for hearing on April 9, 1943, and the said Directive Order caused postponement of said hearing by the Regional War Labor Board of Detroit. Because of such postponement, the Union and respondent agreed that any employee of respondent leaving for military service on or after April 8, 1943, and until the approval by the War Labor Board of the said joint application, would receive the retroactive pay increase if the said application were approved.

18. The Regional War Labor Board of Detroit on May 13, 1943, approved the

joint application of the Union and respondent in the following ruling:

"Regional War Labor Board
Region XI
of the
National War Labor Board

May 13, 1943
Case No. 11-1386

In the Matter of:
Carboloy Company, Inc.,
Detroit Michigan
–and–
Local No. 771,—UAW CIO

Ruling of the Board.

The Regional War Labor Board for the 11th Region, acting as the duly authorized agent of the National War Labor Board, and pursuant to the powers vested in said Board by Executive Orders No. 9017 of January 12, 1942, 50 U.S.C.A.Appendix, § 1507 note, No. 9250 of October 3, 1942 and No. 9328 of April 8, 1943, hereby approves the proposed plan of job classification and evaluation as submitted jointly by the Company and the Union, retroactively to November 2, 1942.

(signed) Louis C. Miriani     (signed) Noel Fox
Vice Chairman
(signed) Leo LaMotte     (signed) Ray Carroll
Dissenting:     (signed) William J.
(signed) Chester A. Cahn     Cronin"

19. The ruling or approval of the Regional War Labor Board of Detroit, because two members dissented, did not become effective until the War Labor Board refused to review the ruling of the Regional Board, which it did on May 26, 1943.

20. Petitioner Zagaiski from and after November 2, 1942, to the time he left for military service, to wit, April 2, 1943, worked a total of 1,168.66 hours, and the said joint application which was made to the War Labor Board provided for a five-cents-an-hour increase for the job at which petitioner had been employed.

21. Petitioner Greba from and after November 2, 1942, to the time he left for military service, to wit, March 16, 1943, worked a total of 983 hours.

22. This stipulation does not purport to include all the relevant facts in this cause, and is not to be taken as a waiver of, or a bar to, presentation by any of the parties of additional facts, documents and other evidence.

Conclusions of Law.

1. The Union was the authorized bargaining agent for these petitioners.

2. The Union and the Company, on November 17, 1942, entered into an agreement which in part provided as follows:

"Subject to War Labor Board approval—the Board's decision regarding job classification and rates would be retroactive to November 2, 1942, for those employees actually on the active payroll as of the date on which the decision by the War Labor Board is officially made."

3. The War Board approved the plan of job classification and evaluation as submitted jointly by the Company and the Union, retroactively to November 2, 1942.

4. That the decision of the War Labor Board, approving the contract of November 17, 1942, was officially made on May 26, 1943.

5. That the ruling of the War Labor Board of May 26, 1943, was not a directive.

6. That employees of the Company who were on the active payroll of the Company on May 26, 1943, were entitled to the retroactive pay increases.

7. An agreement entered into between the Union and the Company, subsequent to November 17, 1942, and after the time these petitioners had left the Company for military service, wherein it was agreed that: "Any employee of the Company leaving for military service on or after April 8, 1943, and before the date of final approval of the application by the War Labor Board, would receive retroactive pay increases if the said application were approved." has no application to the status of the within petitioners.

8. That the status of the petitioners in relation to this controversy is governed by the agreement between the Union and the Company of November 17, 1942.

9. That on May 26, 1943, that being the date of approval of the War

Labor Board, these petitioners were not on the active payroll of the Company.

10. That the clause in the agreement between the Union and the Company of November 17, 1942, which provides: "The Board's decision regarding job classification and rates would be retroactive to November 2, 1942, for those employees actually on the active payroll as of the date on which the decision of the War Labor Board is officially made." had equal application to all non-veteran employees of the Company who were on leave of absence and not on the active payroll as of May 26, 1943.

11. That no testimony was adduced at the hearing of the within cause establishing the fact that any non-veteran employee of the Company who was on leave of absence and not on the active payroll on May 26, 1943, was permitted to or did participate in the retroactive pay increases as provided by the agreement of November 17, 1942.

12. Since the within petitioners were treated like non-veteran employees on leave of absence and not on the active payroll as of May 26, 1943, the petitioners are not entitled to the benefits of the retroactive pay increases.

An Order may be so entered.